# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46146-3-II |
| Respondent, | |
| v. | |
| OMAR ALEJANDRO MORENO-VALENTIN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury returned a verdict finding Omar Alejandro Moreno-Valentin guilty of second degree assault.[1]  Moreno[2] appeals his conviction, asserting that the trial court erred (1) by admitting evidence of his prior acts under ER 404(b) and (2) by providing a limiting instruction that permitted the jury to consider evidence of his prior acts for improper purposes. We hold that the trial court abused its discretion by admitting evidence of Moreno's prior acts for improper purposes, and that it erred by providing a limiting instruction allowing the jury to consider the evidence for those improper purposes.  Because we are unable to conclude that these errors were harmless, we reverse Moreno's conviction and remand for a new trial.

---

[1] The jury also returned special verdicts finding that Moreno committed the offense against a member of the same family or household and that he committed the offense within the sight or sound of the victim's juvenile child.

[2] Moreno-Valentin stated at trial that he goes by the last name "Moreno."  Report of Proceedings (RP) at 383.

FACTS

In 2013, Moreno lived in a Vancouver, Washington apartment with his girlfriend, Diana Ruiz Dominguez,[3] and the couple's two-year-old son. On the evening of December 1, 2013, Moreno became suspicious that Ruiz was cheating on him after viewing text messages on Ruiz's phone while she was at work. Moreno contacted Ruiz and asked her to come home. After Ruiz arrived home from work early the next morning, the couple began arguing about the text messages. Moreno and Ruiz dispute what happened next.

According to Ruiz, Moreno grabbed her hair and threw her against a sofa. Ruiz stated that her face hit the wooden part of the sofa, which caused bruising on her face. Ruiz also stated that Moreno told her she "was only alive because [their] son was there watching." Report of Proceedings (RP) at 234. Ruiz further stated that later that same day, Moreno grabbed her neck with one hand and squeezed hard for a couple of seconds. Ruiz said that she could not breathe while Moreno was squeezing her neck. Ruiz stated that she tried to retrieve her phone from Moreno so she could call for help, but Moreno pushed her against a staircase, which caused her hand to be cut when it contacted the metal railing. After Moreno left the apartment with their son, Ruiz went to her cousin's house to borrow a phone and later called 911 after returning home.

According to Moreno, he became upset after Ruiz admitted to cheating on him but did not grab her hair or push her against the sofa. Moreno stated that he prevented Ruiz from obtaining her phone because he believed that she wanted to erase the text messages that he had discovered. Moreno further stated that Ruiz pulled on his arm and bit him as he was walking

_____

[3] Ruiz Dominguez stated at trial that she goes by the last name "Ruiz." RP at 215.

2

down the stairs. Moreno said that after Ruiz bit him, he grabbed her and pushed her away. Moreno also said a second struggle ensued when Ruiz grabbed him from behind and got on top of him. Moreno stated that Ruiz cut her finger during the second struggle but that he did not know how that had occurred.

Vancouver Police Officers Scotland Hammond and Ilia Botvinnik responded to Ruiz's 911 call. Upon arriving at the residence, Hammond saw that Ruiz had a small cut on her finger and faint horizontal marks on the left side of her neck. Hammond opined that the marks on Ruiz's neck were consistent with having been strangled with a right hand. Botvinnik photographed Ruiz's injuries.

The State charged Moreno with one count of second degree assault by strangulation or suffocation. The State also alleged the aggravating factors that Moreno committed the assault against a family or household member and that he committed the assault within the sight or sound of the victim's minor child.

Before trial, the State filed a motion in limine to present evidence of Moreno's prior acts "to assess the dynamics of domestic violence relationships, to assess credibility of the victim," and to rebut any claim that the defendant had acted in self-defense. RP at 40. In support of its motion, the State presented an offer of proof, in which Ruiz testified that when Moreno became angry, he would shout, break things, push and shove her, and call her "slut" and "bitch." RP at 112, 123. Ruiz stated that Moreno was often jealous, would not allow her to have any friends, would not allow her to talk with coworkers, did not like it when she visited her family, and did not like the way she dressed. Ruiz further stated that when Moreno got angry, he would hit doors with his fists. Ruiz also described an incident where Moreno allegedly acted violently

3

against their son.  The trial court ruled that the State was prohibited from presenting any evidence regarding Moreno's alleged violent act against the couple's son, but it permitted the State to present evidence of Moreno's use of angry language and of his conduct in hitting doors with his fists.[4]

At trial, Ruiz and Moreno both testified to their version of the December 2 incident. Additionally, Ruiz testified about the history of her relationship with Moreno.  Ruiz stated that after their son's birth, Moreno would often become angry and impatient with her.  Ruiz said that, at first, Moreno would express his anger by yelling at her, but that over time Moreno started throwing things, breaking doors with his fists, and pushing her.

After the State and defense rested, defense counsel requested a limiting instruction with regard to the ER 404(b) evidence of Moreno's prior acts.  Defense counsel acknowledged that there were some deficiencies in the limiting instruction that she had proposed, and the trial court responded by stating that it would write a custom limiting instruction.  After the trial court discussed its proposed language for the limiting instruction with the parties, the parties agreed that the trial court could instruct the jury as follows:

> The court allowed testimony about prior acts by the defendant leading up to the incident for which he is presently charged.  That evidence was admitted only for the purpose of evaluating the credibility of Mrs. Ruiz, the dynamics of the relationship with defendant, and/or whether defendant acted in self-defense.  You may not consider it for any other purpose.  Any discussion of the evidence during your deliberations must be consistent with this limitation.

---

[4] The trial court also permitted the State to present evidence of Moreno's jealousy and of his conduct in isolating Ruiz from her friends and family, but the State presented no such evidence at trial.

4

Clerk's Papers (CP) at 44. The trial court also granted defense counsel's request to instruct the jury on self-defense.

The jury returned a verdict finding Moreno guilty of second degree assault. The jury also returned special verdicts finding that Moreno committed the offense against a member of the same family or household and that he committed the offense in the presence of the victim's minor child. Moreno appeals his conviction.

ANALYSIS

Moreno asserts that the trial court's admission of prior acts evidence under ER 404(b), coupled with a limiting instruction that permitted the jury to consider the evidence for improper purposes, requires reversal of his second degree assault conviction. We agree.

I. ER 404(b)

We review a trial court's ruling admitting evidence for an abuse of discretion. *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b) operates as a "categorical bar to admission of evidence for the purpose of proving a person's character and showing that the person acted in conformity with that character." *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Although ER 404(b) prohibits the admission of prior acts evidence to prove action in conformity with a person's character, such evidence may be admissible for other purposes. *Gresham*, 173 Wn.2d at 420. The party seeking to admit prior acts evidence, here the State, bears the burden of demonstrating a proper purpose for admitting the evidence. *Gresham*, 173 Wn.2d at 420.

5

Before admitting prior acts evidence, a trial court is required to "(1) find by a preponderance of the evidence that the [acts] occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). When a trial court admits evidence that is subject to ER 404(b), the party against whom such evidence is admitted is entitled to a limiting instruction "informing the jury that the evidence is to be used only for the proper purpose and not for the purpose of proving the character of a person in order to show that the person acted in conformity with that character." *Gresham*, 173 Wn.2d at 420.

Here, the trial court ruled that the State could present evidence of Moreno's prior acts on three bases: (1) to evaluate Ruiz's credibility, (2) to evaluate the dynamics of Moreno's and Ruiz's relationship, and (3) to rebut any claim that Moreno had acted in self-defense.

A.    *Victim Credibility*

Moreno first contends that, under the facts of this case, the evaluation of Ruiz's credibility was not a proper basis upon which to admit evidence of his prior acts. We agree. In cases involving domestic violence, admission of the defendant's prior acts of domestic violence may be admissible to assist the jury in evaluating the victim's credibility. *State v. Magers*, 164 Wn.2d 174, 186, 189 P.3d 126 (2008) (lead opinion of Alexander, C.J.), 164 Wn.2d at 194 (concurring opinion of Madsen, J.); *State v. Grant*, 83 Wn. App. 98, 107-08, 920 P.2d 609 (1996). The justification for admitting evidence of a defendant's prior acts of domestic violence is to "assist the jury in judging the credibility of a *recanting* victim" who has provided conflicting statements about the defendant's conduct. *Magers*, 164 Wn.2d at 187 (lead opinion

of Alexander, C.J.) (emphasis added). However, in *Gunderson* our Supreme Court held that a trial court abuses its discretion by admitting prior acts evidence to evaluate a victim's credibility where the victim "neither recants nor contradicts prior statements." 181 Wn.2d at 925. In so holding, the *Gunderson* court reasoned that prior acts evidence in domestic violence cases presents a "very high" risk of unfair prejudice and "[t]o guard against this heightened prejudicial effect . . . the admissibility of prior acts of domestic violence [is confined] to cases where the State has established their overriding probative value, such as to explain a witness's otherwise inexplicable recantation or conflicting account of events." 181 Wn.2d at 925.

Here, as in *Gunderson*, Ruiz neither recanted nor provided inconsistent statements justifying the admission of prior acts evidence to evaluate her credibility. The State thus failed to establish the "overriding probative value" of the prior acts evidence relative to its "very high" risk of unfair prejudice. *Gunderson*, 181 Wn.2d at 925. Accordingly, the trial court abused its discretion by admitting evidence of Moreno's prior acts for this purpose.

B.    *Dynamics of the Relationship*

Next, Moreno contends that evaluation of the dynamics of his relationship with Ruiz was not a proper basis upon which to admit evidence of his prior acts. Again, we agree. The dynamics of an alleged domestic violence relationship is too broad a rationale to justify the admission of prior acts evidence and, here, it appears to merely describe the nature of the evidence the State sought to present rather than support any basis for its admission.[5] Although

---

[5] The State's argument at the hearing on its motion to admit evidence of Moreno's prior acts illustrates this later point. There, the State asserted, "The full dynamic of a domestic violence relationship is admissible in cases involving ongoing abuse of an alleged victim . . . to explain the behavior of the victim that might seem contrary to what a . . . juror might generally expect

case law suggests that, under certain circumstances, the jury may evaluate the dynamics of a domestic violence relationship where such evaluation relates to a permissible purpose under ER 404(b), the dynamics of a domestic violence relationship does not itself constitute a proper basis for admitting evidence subject to ER 404(b). *See, e.g.*, *Grant*, 83 Wn. App. at 108 ("The jury was entitled to *evaluate her credibility* with full knowledge of the dynamics of a relationship marked by domestic violence. . . .") (emphasis added). To conclude otherwise would be contrary to the result reached in *Gunderson*. Accordingly, we hold that the trial court abused its discretion by admitting evidence of Moreno's prior acts for the purpose of evaluating the dynamics of his relationship with Ruiz.

C.      *Self-Defense*

Finally, Moreno contends that rebuttal of his self-defense claim was not a proper basis upon which to admit evidence of his prior acts because he did not claim self-defense at trial. The record belies Moreno's contention. Moreno testified at trial that after Ruiz bit him, he grabbed her and pushed her away.[6] Moreno requested, and the trial court gave, a self-defense instruction.

---

someone to do." RP at 45-46. The State further asserted at the hearing, "The full explanation of a domestic violence relationship helps [the jury] weigh the credibility of that statement on the part of the alleged victim in this case." RP at 47.

[6] During his testimony Moreno demonstrated the manner in which he grabbed Ruiz, but the record does not adequately convey this demonstration:

> [Moreno]: . . . [Ruiz] was biting me, and so I grabbed her right here and that's when I—I pushed her away. I was able to—to get away.
> [Defense counsel]: Okay. When you said that you grabbed her, do you remember where you grabbed her?
> [Moreno]: More or less here. Because she was on the—on the floor and I don't remember—I was on a stair. I don't remember if it was the fourth or third stair. That's when I pulled her, because we were practically on the same level.
> [Defense counsel]: And how—but how does—how did you pull her?

Moreno presented evidence at trial sufficient to support his request for a self-defense jury instruction. *State v. Ponce*, 166 Wn. App. 409, 415-16, 269 P.3d 408 (2012). Accordingly, Moreno's claim that he did not claim self-defense at trial fails.

Under certain circumstances, a trial court may properly admit evidence subject to ER 404(b) on the basis that the evidence rebuts the defendant's claim of self-defense. *State v. Thompson*, 47 Wn. App. 1, 11-12, 733 P.2d 584 (1987). We need not determine whether those circumstances were present here because, as will be discussed below, the trial court's error in admitting the prior acts evidence for improper purposes, coupled with its instruction to the jury that it could consider the prior acts evidence for those improper purposes, warrants reversal of Moreno's conviction.[7]

## II. LIMITING INSTRUCTION

Next, Moreno argues that the trial court erred by instructing the jury that it could consider evidence of his prior acts for improper purposes. We agree.

In general, a trial court must give a limiting instruction when it admits evidence for a limited purpose and the party against whom the evidence was admitted requests the instruction. *Gresham*, 173 Wn.2d at 420; *see also State v. Aaron*, 57 Wn. App. 277, 281, 787 P.2d 949

---

[Moreno]: I don't remember if it was—I don't know if it was like this, but I pulled her to get her off of me. (Witness gestures).
RP at 426.

[7] The State also asserts for the first time on appeal that the prior acts evidence was admissible to show motive and to show a common scheme or plan. We do not address these potential bases for admitting the prior acts evidence because the trial court instructed the jury that it could only consider the evidence "for the purpose of evaluating the credibility of Mrs. Ruiz, the dynamics of the relationship with defendant, and/or whether defendant acted in self-defense," and that it could not "consider it for any other purpose." CP at 44.

(1990) (citing ER 105). Although a trial court may refuse to give a limiting instruction that erroneously states the law, once a defendant requests even an erroneous limiting instruction in the ER 404(b) context, the trial court has an independent duty to provide a limiting instruction that correctly states the law. *Gresham*, 173 Wn.2d at 424-25. And the trial court has broad discretion to fashion its own limitation on the use of evidence. *State v. Hartzell*, 156 Wn. App. 918, 937, 237 P.3d 928 (2010).

Pursuant to its ER 404(b) ruling admitting evidence of Moreno's prior acts and Moreno's request for a limiting instruction, the trial court instructed the jury as follows:

> The court allowed testimony about prior acts by the defendant leading up to the incident for which he is presently charged. That evidence was admitted only for the purpose of evaluating the credibility of Mrs. Ruiz, the dynamics of the relationship with defendant, and/or whether defendant acted in self-defense. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 44. Because it was improper to admit evidence of Moreno's prior acts to evaluate Ruiz's credibility and to evaluate the dynamics of her relationship with Moreno, the trial court erred by instructing the jury that it could consider the evidence for those purposes. The error in instructing the jury that it could consider evidence of Moreno's prior acts "for the purpose of evaluating . . . the dynamics of [Ruiz's] relationship with defendant" is particularly troublesome. CP at 44. First, the instruction is confusing and misleading because the dynamics of Ruiz's relationship with Moreno describes the evidence at issue rather than a purpose for which the jury could consider it. Second, instructing the jury that it could consider evidence of Moreno's prior acts for such a broad purpose without further guidance allowed the jury to make the impermissible inference that Moreno was guilty of his charged crime because he had a propensity for committing acts of domestic violence, contrary to ER 404(b). *State v. Wade*, 98

10

No. 46146-3-II

Wn. App. 328, 336, 989 P.2d 576 (1999). Accordingly, we hold that the trial court erred by so instructing the jury.

### III. INVITED ERROR

The State asserts that Moreno invited any error in the trial court's limiting instruction by requesting it. We reject the State's assertion. The invited error doctrine precludes review of an error that the appealing party caused at trial. *State v. Jones*, 144 Wn. App. 284, 298, 183 P.3d 307 (2008). Moreno did not cause the trial court to err by requesting a limiting instruction following the trial court's erroneous evidentiary ruling to which he had objected. Moreover, even if Moreno had requested the specific language contained in the limiting instruction, which he did not, the trial court had an independent duty to correctly instruct the jury on the limited purpose for which it could consider evidence of his prior acts. *Gresham*, 173 Wn.2d at 424. Accordingly, we hold that the invited error doctrine does not apply.

### IV. HARMLESS ERROR

The error in admitting evidence of Moreno's prior acts for improper purposes and in instructing the jury that it could consider the evidence for these improper purposes was not harmless. An evidentiary error is harmless unless, "'within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" *State v. Thomas*, 150 Wn.2d 821, 871, 83 P.3d 970 (2004) (quoting *State v Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)). Here, there were no testifying eyewitnesses to the alleged assault on Ruiz and, thus, the jury's finding of guilt turned largely on the credibility of Ruiz and Moreno. And, although Hammond testified that in his opinion, he saw what appeared to be "faint marks of fingers on the

11

left side of [Ruiz's] neck," these marks were also consistent with Moreno's self-defense claim. RP at 146.

Therefore, the trial court's error in instructing the jury that it could consider the highly prejudicial nature of Moreno's prior acts to evaluate Ruiz's credibility clearly had a material effect on the trial's outcome. Additionally, instructing the jury that it could consider evidence of Moreno's prior acts for the broad purpose of evaluating the dynamics of the couple's relationship materially affected the trial's outcome because, without further guidance, the instruction permitted the jury to view his prior acts as propensity evidence. Accordingly, we reverse Moreno's conviction and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Melnick, J.